# In the United States Court of Federal Claims

No. 21-1685C

(Filed: November 29, 2021)

|  |  |
|---|---|
| **SERGENT'S MECHANICAL SYSTEMS, INC. d/b/a SERGENT CONSTRUCTION,** | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) |

*Joel L. Hamner*, Whitcomb, Selinsky, P.C., Denver, CO, for Plaintiff. With him on the briefs was *Jonathan Perrone*.

*Michael D. Snyder*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, *Martin F. Hockey, Jr.*, Acting Director, and *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## ORDER

*SOLOMSON*, **Judge.**

The issue before the Court is straightforward: whether the United States Court of Federal Claims can grant preliminary injunctive relief where Plaintiff asserts only a Contract Disputes Act ("CDA")[1] claim pursuant to 28 U.S.C. § 1491(a). The Court once again answers that question in the negative — and it is not a close call.

### I.  PROCEDURAL BACKGROUND

On August 12, 2021, Plaintiff, Sergent's Mechanical Systems, Inc., d/b/a Sergent Construction ("SMSI"), filed a Complaint against Defendant, the United States, acting

---

[1] Pub. L. No. 95-563, 92 Stat. 2383 (1978) (codified at 41 U.S.C. §§ 7101–7109).

1

by and through the United States Department of Veterans Affairs ("VA").  ECF No. 1 ("Compl."). SMSI alleged that the VA improperly terminated SMSI's contract for default. *Id.* ¶ 1, 2.  The now-terminated contract was for "resolv[ing] certain heating, ventilation, and air conditioning ('HVAC') issues" at a VA center in Florida. *Id.* ¶ 15. The Complaint also alleged, *inter alia*, that the VA improperly failed to provide declaratory relief, changed the contract, and refused to pay SMSI "for work completed under the contract." *Id.* ¶ 1.  The Complaint cited the Tucker Act, 28 U.S.C. § 1491, as amended by the CDA, as the basis for the Court's jurisdiction. *Id.* ¶ 12.  SMSI filed an Amended Complaint on August 24, 2021, reiterating the same claims and the same jurisdictional basis for them (and reflecting apparently only minor corrections).  ECF No. 12 ("Am. Compl.").  The Amended Complaint seeks primarily money damages, as well as declaratory relief unrelated to SMSI's request for preliminary equitable relief. *Id.* at 19.

On the same day that SMSI filed its initial Complaint, SMSI filed a motion for a temporary restraining order and preliminary injunction.  ECF No. 5 ("TRO-PI Motion"). SMSI requested that this Court enjoin the VA from:  (1) "[e]xecuting a completion contract for any remaining" work under the terminated contract; (2) "authorizing the performance of any work" under any completion contract that "has already been executed"; and (3) "[n]oticing other federal procuring agencies, contracting officers, or other government officials of the contested termination for default . . . via the government's various evaluation reporting tools[.]" *Id.* at 1–2.  Although SMSI sought such preliminary relief pursuant to 28 U.S.C. § 1491(b)(2), ECF No. 6 at 18, neither SMSI's initial Complaint nor its Amended Complaint mention 28 U.S.C. § 1491(b).  *See* Compl.; Am. Compl.; TRO-PI Motion at 2 ("Concurrent with this motion, Sergent has filed a Complaint under [the] Contract Disputes Act of 1978[.]").[2]

On August 16, 2021, the Court held a status conference to discuss the TRO-PI Motion.  ECF No. 10; ECF No. 15 ("Tr.").  During that status conference, SMSI's counsel conceded:  (1) SMSI's Complaint was limited to a CDA claim; (2) the TRO-PI Motion relied upon § 1491(b), but *not* § 1491(a); and (3) the TRO-PI Motion *should have* cited, but did not address, 28 U.S.C. § 1491(a).[3]

---

[2] Section 1491(b) of Title 28 of the United States Code provides an "interested party" with a cause of action to challenge an agency's procurement-related decisions, commonly referred to as "bid protests."  *Tolliver Grp., Inc. v. United States*, 151 Fed. Cl. 70, 95–99 (2020) (discussing actions pursuant to 28 U.S.C. § 1491(b)).

[3] *See* Tr. at 7:16–22 ("THE COURT: But you do agree that there is no 1491(b) claim here at all, correct?  [PLAINTIFF]: Related to bids, Your Honor, no.  THE COURT: Well, related to a procurement action. This is a pure CDA claim in your Complaint.  Correct?  [PLAINTIFF]: Yes, Your Honor."); Tr. at 4:20 – 5:3 ("THE COURT: But your [TRO-PI] Motion only cites 1491(b).  Is it your contention that I have injunctive relief authority under 1491(a)?  [PLAINTIFF]: Yes, sir.  Yes, Your Honor.  THE COURT: So where is any citation to 1491(a) in your motion?

Following the status conference, the Court, on August 19, 2021, denied SMSI's TRO-PI Motion because "the plain language of § 1491(a)(2) does not authorize this Court to issue injunctive relief in [monetary] CDA cases, and particularly not preliminary injunctive relief." *Sergent's Mech. Sys., Inc. v. United States*, -- Fed. Cl. --, 2021 WL 3672176, at *2 (Fed. Cl. Aug. 19, 2021).

On August 27, 2021, SMSI filed a motion requesting that this Court certify its denial of SMSI's TRO-PI Motion for an interlocutory appeal to the United States Court of Appeals for the Federal Circuit, our appellate court. ECF No. 13-1, Plaintiff's Memorandum in Support of Its Motion to Certify ("Pl. Mem."). The government filed its response on September 10, 2021, arguing that SMSI's motion to certify was "improper and unsupported by any source of relevant law." ECF No. 16 at 1. In particular, the government pointed out that SMSI could have pursued an immediate interlocutory appeal because this Court's order denied a request for injunctive relief. *Id.* at 2–3 & n.2 (citing 28 U.S.C. § 1292(a)(1), (c)(1), and *Cont'l Serv. Grp., Inc. v. United States*, 2017 WL 4926842, at *6 (Fed. Cl. Oct. 31, 2017)).

The Court agreed with the government; the law is clear that SMSI's motion for certification was unnecessary. ECF No. 17. Nevertheless, the Court exercised its discretion to treat SMSI's motion as one for reconsideration of this Court's prior denial of SMSI's TRO-PI Motion, pursuant to Rule 54(b) of the Rules of the United States Court of Federal Claims ("RCFC"). *Id.* (citing *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 530–33 (2021)). This tolled the 60-day appeal deadline. ECF No. 17 (citing *O'Connor v. United States*, 392 F. App'x 861, 862 (Fed. Cir. 2010) (per curiam)). The Court ordered the government to respond to the merits of SMSI's arguments regarding preliminary injunctive relief, ECF No. 17, and the government accordingly filed its response on September 28, 2021, ECF No. 18 ("Def. Resp."). Plaintiff filed a reply on October 13, 2021. ECF No. 20 ("Pl. Reply"). Plaintiff's motion for reconsideration is now fully briefed.

## II. STANDARD OF REVIEW

Pursuant to RCFC 54(b), this Court has considerable discretion to revisit any decision "that adjudicates fewer than all the claims" at issue, as long as it does so "before the entry of a judgment adjudicating all the claims." Because this Court has not yet entered a judgment in this case, the Court elects to reconsider its decision to deny SMSI's TRO-PI Motion. *See E&I Global Energy Servs.*, 152 Fed. Cl. at 531–32 (summarizing precedent and concluding that "the Court's discretion under the law of the case doctrine, and RCFC 54(b), is vast" and that "the court has the power to

---

[PLAINTIFF]: Your Honor, if (a) is not cited in the motion, then that would have been an oversight as to the letter of that particular citation.").

reconsider its decisions *until a judgment is entered*" (quoting *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991))).

### III. THE COURT DENIES SMSI'S MOTION FOR RECONSIDERATION AND ONCE AGAIN REJECTS SMSI'S REQUEST FOR A TEMPOARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

The United States Court of Federal Claims does not have general authority to issue injunctive relief. *See, e.g.*, *Richardson v. Morris*, 409 U.S. 464, 465 (1973) ("[T]he [Tucker] Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States."); *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988) ("The Claims Court does not have the general equitable powers of a district court to grant prospective relief. Indeed, we have stated categorically that 'the Court of Claims has no power to grant equitable relief.'" (quoting *Richardson*, 409 U.S. at 465)); *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011) ("Unlike the district courts, however, the [Court of Federal Claims] has no general power to provide equitable relief against the Government or its officers."); *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1330 (2020) (noting that "the Court of Federal Claims 'does not have the general equitable powers of a district court to grant prospective relief'" (quoting *Bowen*, 487 U.S. at 905)); *Roth v. United States*, 378 F.3d 1371 (Fed. Cir. 2004) ("the Court of Federal Claims does not possess general equity jurisdiction"); *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017) ("The Tucker Act does not generally confer jurisdiction for actions seeking declaratory or injunctive relief.").

Instead, and as explained in more detail below, the Court may award equitable or other nonmonetary relief in Tucker Act cases in only three statutorily defined circumstances: (1) in bid protest actions brought pursuant to 28 U.S.C. § 1491(b); (2) as "incident of and collateral to" a monetary judgment, as set out in the first two sentences of 28 U.S.C. § 1491(a)(2); and (3) for certain types of nonmonetary CDA claims, as described in the last sentence of § 1491(a)(2).[4] SMSI's claims in its Amended Complaint fit within none of those categories.

---

[4] *See, e.g.*, *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) ("Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, *see* 28 U.S.C. §§ 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court."); *Synernet Corp. v. United States*, 215 F.3d 1348 (Fed. Cir. 1999) ("Apart from exceptions not applicable here, *see* 28 U.S.C. § 1491(a)(2), (b)(2), the Court of Federal Claims has no power to grant equitable relief."); *Malcolm v. United States*, 690 F. App'x 687, 689 (Fed. Cir. 2017) (per curiam) ("The court cannot grant equitable relief unless such relief is 'an incident of and collateral to' a money judgment." (quoting 28 U.S.C. § 1491(a)(2))); *Piotrowski v. United States*, 722 F. App'x 982, 985 (Fed. Cir. 2018) ("[T]he Court of Federal Claims correctly held that it could not provide equitable relief to correct [Plaintiff]'s military records because the requested relief

Indeed, aside from casting all the Tucker Act provisions together in a legal brew to see whether an equitable relief golem might magically emerge, SMSI makes little effort to demonstrate that the Court has the power to issue the preliminary injunction SMSI seeks. SMSI "'is the master of [its] complaint' and [is] free to choose between legal theories." *McNeil v. Cmty. Probation Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). Having selected the CDA route — and having failed to allege facts to support an action pursuant to 28 U.S.C. § 1491(b) — SMSI cannot obtain a preliminary injunction.

### A. 28 U.S.C. § 1491(a) Does Not Provide This Court with Jurisdiction to Grant Preliminary Injunctive Relief

The Court begins, as it must, with the Tucker Act's plain text, as amended by the CDA:

> [1] To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. [2] In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. [3] The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2).

The above-quoted, plain language of 28 U.S.C. § 1491(a)(2) demonstrates that this Court lacks broad jurisdiction to issue equitable relief. Instead, § 1491(a) permits the Court to issue only the following specific orders: (1) orders "directing restoration to

---

was not tied to a money judgment."); *Langan v. United States*, 812 F. App'x 982, 987 (Fed. Cir. 2020) (per curiam) ("The Claims Court lacks general equity jurisdiction and can only award equitable relief 'incident of and collateral to' a money judgment." (quoting 28 U.S.C. § 1491(a)(2))).

office or position"; (2) orders directing "placement in appropriate duty or retirement status"; (3) orders directing the "correction of applicable records"; and (4) orders to "remand appropriate matters to any administrative or executive body or official with such direction as the Court may deem proper and just." 28 U.S.C. § 1491(a)(2). Moreover, such relief may be ordered only "to complete the relief afforded by the [money] judgment" and "as an incident of and collateral to any such [money] judgment." *Id.* In other words, § 1491(a)(2) nowhere grants the Court the power to issue a preliminary injunction — both because such relief is not in the short list of allowable equitable relief, and because a preliminary injunction, by definition, cannot be "incident of and collateral to" a final money judgment. *Id.*[5]

In keeping with the statute's plain language, the Federal Circuit has interpreted 28 U.S.C. § 1491(a) to preclude this Court from granting injunctive relief outside of the circumstances defined in the statute. *See, e.g.*, *Kanemoto v. Reno*, 41 F.3d 641, 644–45 (Fed. Cir. 1994) ("The remedies available in [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances[.]"), *quoted in Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1354 (Fed. Cir. 2021); *see also Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 943 (Fed Cir. 2007) ("In order for a claim to be brought under either the Tucker Act or the Little Tucker Act, the claim must be for monetary relief; it cannot be for equitable relief, except in very limited circumstances not at issue here."); *Cooper v. United States*, 860 F. App'x 742, 744 (Fed. Cir. 2021) (per curiam) ("the Court of Federal Claims cannot entertain claims for injunctive relief, except in narrowly defined circumstances").

The Federal Circuit also has repeatedly emphasized that any equitable relief pursuant to § 1491(a)(2) must be tied to, and in support of, a money judgment, further precluding preliminary injunctive relief in this case. *See, e.g.*, *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) ("It is true that limited equitable relief sometimes is available in Tucker Act suits. However, that equitable relief must be 'an incident of and collateral to' a money judgment." (quoting 28 U.S.C. § 1492(a)(2))). In *James*, the Federal Circuit summarized the statute's requirement succinctly: "Stated another way, the Court of Federal Claims has no power 'to grant affirmative nonmonetary relief unless it is tied and subordinate to a money judgment.'" *Id.* (quoting *Austin v. United States*, 206 Ct. Cl.

---

[5] The limiting language of 28 U.S.C. § 1491(a)(2) stands in stark contrast to that of 28 U.S.C. § 1491(b)(2), which provides the Court with broad injunctive relief power, albeit with respect to a narrower class of actions defined in § 1491(b). 28 U.S.C. § 1491(b)(2) (providing that "the court[] may award *any relief that the court considers proper, including declaratory and injunctive relief* except that any monetary relief shall be limited to bid preparation and proposal costs" (emphasis added)). The type of relief the Court may order thus varies depending on whether an action is brought pursuant to 28 U.S.C. § 1491(a) or § 1491(b).

719, 723 (1975)), *cited in Shelden v. United States*, 742 F. App'x 496, 502 (Fed. Cir. 2018) (per curiam); *see also Bobula v. Dep't of Justice*, 970 F.3d 854, 859 (Fed. Cir. 1992) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages.").

The Court of Federal Claims, of course, has faithfully followed the Federal Circuit's instructions. *See, e.g.*, *Rodgers v. United States*, 153 Fed. Cl. 538, 543 (2021) (denying plaintiff's various requests for equitable relief because "[t]his Court's ability to grant equitable relief under the Tucker Act is limited" and "[t]he equitable relief Plaintiff requests is plainly not incidental of and collateral to money damages"); *Meidinger v. United States*, 146 Fed. Cl. 491, 494 (2020) ("Furthermore, this court lacks jurisdiction over actions seeking equitable relief, such as a declaratory or injunctive remedy, that are not brought pursuant to the specific grants of authority to this court to issue such relief."); *Looks Great Servs., Inc. v. United States*, 145 Fed. Cl. 324, 3228 (2019) ("in cases not involving bid protests the Court of Federal Claims may only grant equitable relief when 'it is tied and subordinate to a money judgment'" (quoting *Stephanatos v. United States*, 81 Fed. Cl. 440, 445 (2008), *aff'd*, 306 F. App'x 560 (Fed. Cir. 2009))); *Casiano v. United States*, 141 Fed. Cl. 528, 541 (2019) (denying plaintiffs "the kind of broad equitable relief requested in their complaint — *i.e.*, an order 'enjoin[ing] the [United States Public Health Service] from its unlawful practices described in th[e] complaint'" because "[t]his Court has limited authority to order injunctive relief"); *Porter v. United States*, 131 Fed. Cl. 552, 560 (2017) (holding that the Court of Federal Claims' "power to order the correction of a service member's military records depends on the correction being 'incidental' to an award of monetary relief, usually in the form of increased payments" (first citing *Pearl v. United States*, 111 Fed. Cl. 301, 308 (2013); and then citing *Haskins v. United States*, 51 Fed. Cl. 818, 822 (2002)); *Teztlaff v. United States*, 2015 WL 7585333, at *11 (Fed. Cl. Nov. 25, 2015) ("The Court of Federal Claims cannot entertain claims for injunctive relief, except in four statutorily defined circumstances. . . . None of those circumstances applies here. . . . Because plaintiff's request does not fall into one of these exceptions, her motion is denied." (citations omitted)); *Laughlin v. United States*, 124 Fed. Cl. 374, 382 (2015) ("Under the Tucker Act, the court has authority to award equitable relief in the form of a declaratory judgment 'only when such an award would be ancillary to an affirmative obligation of the federal government to pay money damages.'" (quoting *Anderson v. United States*, 59 Fed. Cl. 451, 456 (2004))).

Finally, the third sentence of 28 U.S.C. § 1491(a)(2) provides this Court with jurisdiction to award some types of nonmonetary relief — but not preliminary injunctions — where a proper nonmonetary CDA claim forms the basis of a plaintiff's complaint:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor *arising under section 7104(b)(1) of title 41*, including

7

> a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, *and other nonmonetary disputes on which a decision of the contracting officer has been issued* under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (emphasis added). Nothing in this third sentence of 28 U.S.C. § 1491(a)(2), however, expressly permits the Court to issue preliminary nonmonetary relief. To the contrary, it provides the Court with jurisdiction only to render "judgment" upon "any claim" that has been presented to a contracting officer. *Id.*; 41 U.S.C. § 7103(a)(1) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision.").

Nor does the definition of "claim" under the CDA include preliminary injunctions. While the CDA itself does not define "claim," the Federal Circuit has held "that the definition of the term 'claim' in the [the Federal Acquisition Regulation ("FAR")] governs." *Todd Const., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) (citing *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564–65 (Fed. Cir. 1995)). The FAR, in turn, defines "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." FAR 52.233-1(c); *see also* FAR. 2.101 (defining "claim"). This Court has recognized that preliminary injunctions do not fit within the FAR's definition of a proper CDA claim. *See, e.g.*, *CanPro Invs. Ltd. v. United States*, 120 Fed. Cl. 17, 23 (2015) ("[T]he CDA does not provide for interim injunctive relief while a claim is pending."); *Davis Grp., Inc. v. United States*, 2012 WL 2686053 at *1, *3 (Fed. Cl. July 6, 2012) (denying plaintiff's "preliminary injunction in conjunction with [CDA] claims" absent "express statutory authority for the Court of Federal Claims to issue injunctions in this circumstance").[6]

The law as summarized above is well-settled. *See, e.g.*, Vernon J. Edwards, *Postscript I: Breach of Loss of the Fair Opportunity to Compete*, 20 No. 12 Nash & Cibinic Rep. ¶ 59 (2006) ("[U]nder the CDA, a board or court cannot . . . issue a temporary restraining order, or provide injunctive relief."), *quoted in Vanquish Worldwide, LLC v.*

---

[6] *Cf. Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999) ("The discretion to grant [final] declaratory relief only in limited circumstances allows the court or board to restrict the occasions for intervention during contract performance to those involving a fundamental question of contract interpretation or a special need for early resolution of a legal issue."). In *Alliant*, 178 F.3d at 1263, the Federal Circuit addressed the availability of declaratory relief as part of a final judgment on a proper nonmonetary claim. Moreover, in that case, the contractor sought declaratory relief with respect to its own contract with the government, *id.*, but did not seek equitable relief with respect to a procurement or another party's contract with the government; *Alliant* did not involve a § 1491(b) action.

*United States*, 147 Fed. Cl. 390, 398 (2020); *Digital Techs., Inc. v. United States*, 89 Fed. Cl. 711, 728 (2009); *BLR Grp. of Am., Inc. v. United States*, 84 Fed. Cl. 634, 647 (2008)); Ralph C. Nash & John Cibinic, *Postscript: Nonmonetary Claims*, 19 No. 8 Nash & Cibinic Rep. ¶ 38 (2005) (explaining that "neither the court nor the boards have the power to grant injunctive relief" in CDA cases).[7]

In sum, the statute's plain language and binding Federal Circuit precedent — as well as this Court's decisions — all make clear that we cannot award preliminary injunctive relief in cases brought pursuant to § 1491(a), and particularly not in CDA cases.

### B. SMSI Cannot Circumvent 28 U.S.C. § 1491(a)(2) to Obtain Preliminary Injunctive Relief

Despite the clarity of 28 U.S.C. § 1491(a)(2) and binding precedent interpreting that statutory provision, SMSI asserts that this Court has the power to grant SMSI preliminary injunctive relief. The Court rejects SMSI's arguments.

*First*, SMSI asserts that 28 U.S.C. § 1491(a)(2) "authorizes the Court to 'provide an entire remedy' to a party and 'complete the relief afforded' by any judgment this Court may issue." Pl. Mem. at 5 (quoting § 1491(a)(2)); *see also* Pl. Reply at 5. SMSI misreads the statute. The phrases "entire remedy" and "complete the relief" simply describe the purposes for which the Court can grant *the specific types of relief* the statute identifies in the list that follows (*e.g.*, the correction of records, remand to administrative agency). Preliminary injunctions are not included in that list. *See, e.g., Teztlaff*, 2015 WL 7585333, at *11; *Cooper*, 860 F. App'x at 744.

*Second*, SMSI argues that "a final judgment *need not precede* any other 'remedy' or 'relief'" because § 1491(a)(2) "places no temporal restraints on . . . the relief this Court is empowered to afford." Pl. Mem. at 5 (quoting 28 U.S.C. § 1491(a)(2)). The statute's

---

[7] The Court also notes that the boards of contract appeals take the same view of the CDA. *See, e.g., Heroes Hire LLC v. Dep't of Veterans Affs.*, CBCA 7195, ¶ 37,940 (Oct. 7, 2021) (holding that the United States Civilian Board of Contract Appeals ("CBCA") "lack[s] th[e] type of injunctive power" to "direct the VA to forward invoices" to a disbursement office and pay the contractor directly because "[t]he CDA does not allow [the CBCA] to grant injunctive relief"); *Tiya Support Servs.*, ASBCA No. 62648, 21-1 B.C.A. ¶ 37901 n.3 (July 22, 2021) ("The Board has long held that it does not have jurisdiction to entertain injunctive relief."); *Kostas Greek Food – Zorbas*, ASBCA No. 62213, 21-1 B.C.A. ¶ 37750 (Nov. 23, 2020) ("To the extent Kostas' notice of appeal and complaint can be read to seek injunctive relief or specific performance, such requests are beyond the jurisdiction of the Board."); *Puma Energy Honduras, S.A. De C.V.*, ASBCA No. 61966, 20-1 B.C.A. ¶ 37507 (Jan. 14, 2020) (holding that the Board had no jurisdiction to decide requests for injunctive relief); *Applied Ordnance Tech., Inc.*, ASBCA No. 51297, ASBCA No. 51543, 98-2 B.C.A. ¶ 30,023 (Sept. 17, 1998) ("the Board lacks jurisdiction over suits seeking injunctive relief, or specific performance").

plain language, however, precludes SMSI's reading, as the statute provides the Court with authority to issue the specific relief mentioned "to *complete* the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2) (emphasis added). Merriam-Webster defines the verb form of "complete" as "*to bring to an end* and especially into a perfected state." *Complete*, Merriam-Webster, https://www.merriam-webster.com/dictionary/complete (last visited Nov. 22, 2021) (emphasis added). Even without resorting to any dictionary definitions, however, the Court finds it obvious that there first must be a judgment, in order for any other relief to be "incident of and collateral to" it. 28 U.S.C. § 1491(a)(2). SMSI's assertion that the statute "places no temporal restraints" on the relief this Court can provide contradicts the statute's plain language.

Federal Circuit precedent also precludes SMSI's interpretation of § 1491(a). *See James*, 159 F.3d at 580 ("the Court of Federal claims has no power 'to grant affirmative nonmonetary relief unless it is tied and subordinate to a money judgment'" (quoting *Austin*, 206 Ct. Cl. at 723)). SMSI argues that a preliminary injunction would meet the *James* standard because it is issued only after the Court evaluates the likelihood of success on the merits. Pl. Reply at 6–7. According to SMSI, a preliminary injunction is "subordinate to" a judgment because the latter can undo the preliminary relief. *Id.* Here, as elsewhere, SMSI ignores the rest of the statute — SMSI fails, for example, to address the phrase "complete the relief." 28 U.S.C. § 1491(a)(2). SMSI also ignores the Federal Circuit's instruction that any nonmonetary relief be "tied . . . to a money judgment." *James*, 159 F.3d at 580 (quoting *Austin*, 206 Ct. Cl. at 723).

To support SMSI's theory that 28 U.S.C. § 1491(a)(2) permits this Court to grant preliminary injunctive relief in a CDA case, SMSI misapplies a single line from a 76-year-old decision of the United States Supreme Court. Pl. Mem. at 6 (discussing *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945)). SMSI is correct that, in *De Beers*, the Supreme Court noted that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." 325 U.S. at 220. But, even assuming the nonmonetary relief specified in 28 U.S.C. § 1491(a)(2) may be characterized as injunctive relief, the line SMSI quotes from *De Beers* does not help SMSI for the simple reason that its Amended Complaint does *not* seek *permanent* injunctive relief.

As a general matter, plaintiffs seek preliminary injunctions to preserve the status quo so that if they ultimately achieve success on the merits, they remain well-positioned to secure permanent injunctive relief. *See, e.g.*, *Continental Serv. Grp., Inc. v. United States*, 722 F. App'x 986, 994 (Fed. Cir. 2018) ("The function of preliminary injunctive relief is to preserve the status quo pending a determination of the action on the merits." (quoting *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984))).[8] Thus,

---

[8] *See also PGBA v. United States*, 389 F.3d 1219, 1229, 1232 (Fed. Cir. 2004) (affirming denial of injunctive relief where the trial court "considered [plaintiff's] failure to seek a preliminary injunction as a factor weighing against a grant of injunctive relief"); *Aero Spray v. United States*,

10

preliminary injunction motions must seek "intermediate relief *of the same character as that which may be granted finally*." *De Beers*, 325 U.S. at 220 (emphasis added); *see also Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."), *cited in Bruce v. Reese*, 431 F. App'x 805, 806 n.1 (11th Cir. 2011) (per curiam), *Jones v. Sec. of Pa. Dep't of Corrs.*, 589 F. App'x 591, 594 (3d Cir. 2014) (per curiam), *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); 11A Wright & Miller, Federal Practice & Procedure, § 2947, Purpose and Scope of Preliminary Injunctions (3d ed.) ("Conversely, a preliminary injunction may not issue when it is not of the same character as that which may be granted finally and when it deals with matter outside the issues in the underlying suit.").

In other words, a motion for preliminary injunctive relief must "seek[] to enjoin *the action that the complaint alleges is unlawful*." *Bird v. Barr*, 2020 WL 4219784, at *2 (D.D.C. July 23, 2020) (emphasis in original). SMSI's Amended Complaint does not request permanent injunctive relief. *See* Am. Compl. at 19. Instead, SMSI seeks relief that is characteristic of a CDA claim — that the Court: (1) convert the termination for default to a termination for convenience; (2) award termination costs or unpaid performance costs to SMSI; (3) award damages to SMSI; and (4) award SMSI attorneys' fees and costs. *Id.* None of this requested relief has anything to do with the temporary restraining order or preliminary injunction SMSI seeks at this stage of the case.[9]

The government correctly notes yet another flaw with SMSI's reliance on *De Beers*. In that case, "the Supreme Court *reversed* an order granting an injunction because it was 'not authorized either by statute [the Sherman and Wilson Acts] or by the usages of equity.'" Def. Resp. at 8 (emphasis added) (quoting *De Beers*, 325 U.S. at 223). The same reasoning applies here — nothing in 28 U.S.C. § 1491(a)(2) allows this Court to grant a preliminary injunction. Here, as in *De Beers*, the injunction sought is "not authorized . . . by statute." *De Beers*, 325 U.S. at 223.

*Third*, SMSI asserts that the Court of Federal Claims can grant preliminary injunctive relief in this case because the Federal Circuit "has described this Court's jurisdiction under 28 U.S.C. § 1491(a) as 'comprehensive' and 'broad.'" Pl. Mem. at 6 (citing *Todd Const.*, 656 F.3d at 1311). SMSI's invocation of that case does not help its

---

-- Fed. Cl. --, 2021 WL 5023371, at *25 (Oct. 28, 2021) (noting that "plaintiff did not seek a preliminary injunction or secure an agreed-upon stay of the challenged contract awards, suggesting a lack of irreparable harm" (citing *PGBA*, 389 F.3d at 1229, 1232)).

[9] Nor does SMSI's request for "a declaratory judgment that the VA did not comply with applicable OSHA regulations," Am. Compl. at 19, have any connection with the preliminary injunction SMSI seeks, even assuming the Court has jurisdiction to issue such a declaratory judgment (should SMSI succeed on the merits of its CDA claim).

own.  The Federal Circuit in *Todd Construction* used the words "comprehensive" and "broad" to describe *what qualifies as a proper CDA claim*, not the type of relief available under the CDA.  *See* 656 F.3d at 1311 (explaining that "Congress' overall purpose to confer comprehensive jurisdiction under the CDA confirms that we should read the definition of 'claim' broadly" and finding that "the broad language of the statute and FAR provision supports a broad reading of the term 'claim.'").

While SMSI asserts that no Supreme Court or Federal Circuit decision addresses whether this Court can grant preliminary injunctive relief pursuant to 28 U.S.C. § 1491(a)(2), this is *not* "an open question of law," as SMSI asserts.  Pl. Mem. at 6–7.  For starters, SMSI simply ignores the Federal Circuit cases holding that § 1491(a)(2) restricts the relief available under that statutory subsection to the types of relief expressly listed therein.  *See, e.g.*, *Kanemoto*, 41 F.3d at 644–45 ("The remedies available at [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances[.]"), *quoted in Columbus Regional Hosp.*, 990 F.3d at 1354; *Teztlaff*, 2015 WL 7585333, at *11 ("The Court of Federal Claims cannot entertain claims for injunctive relief, except in four statutorily defined circumstances. . . . None of those circumstances applies here. . . . Because plaintiff's request does not fall into one of these exceptions, her motion is denied." (citations omitted)).

SMSI further asserts that "[t]his issue has come before the Appeals Court at least twice in the past ten years — both times, the Appeals Court has declined to address it, resolving those cases on other grounds."  Pl. Mem. at 7 (citing *Todd Const.*, 656 F.3d at 1311 n.3,[10] and *CanPro Invs. Ltd. v. United States*, 120 Fed. Cl. 17, 22 (2015)).

Preliminarily, the Court notes that *CanPro Investments* is a decision of this Court, and not of the Federal Circuit.  SMSI thus relies upon, at most, a single Federal Circuit decision, but that case — *Todd Construction* — also does not help SMSI.  In *Todd Construction*, the Federal Circuit declined to address a very specific question:  "whether an injunction was available pursuant to the [Court of Federal Claims'] '*power to remand appropriate matters to any administrative or executive body or official* with such discretion as it may deem proper and just.'"  656 F.3d at 1311 n.3 (emphasis added) (quoting 28 U.S.C. § 1491(a)(2)).  SMSI, however, never attempts to explain how the preliminary injunction it seeks might fall under this Court's remand authority pursuant to § 1491(a)(2).

The facts of *Todd Construction* further undermine SMSI's position.  In *Todd Construction*, the plaintiff's complaint involved a challenge to the government's performance evaluation, making the entire nature of the plaintiff's CDA claim

---

[10] SMSI appears to cite the incorrect page number and footnote in *Todd Construction*.  The Court's citations correct the apparent error.

12

nonmonetary.  *See* 656 F.3d at 1309 ("Todd filed a complaint in the [Court of Federal Claims] . . . seeking, *inter alia*, a declaratory judgment.").  In contrast, SMSI's CDA claim seeks primarily monetary relief.  *See* Am. Compl. at 19 (requesting that the Court "[c]onvert the VA's termination . . . for default to a termination for Defendant's convenience," "[a]ward [SMSI] termination costs . . . of $719,003.39," "award [SMSI] $533,154.78 in unpaid performance costs," and "[a]ward [SMSI] $142,884.95 in damages.").[11]

Nor, for that matter, is there any hint in *Todd Construction* that this Court may utilize the remand authority in § 1491(a)(2) to issue a *preliminary* injunction.  And even if the Court were to assume, for the sake of argument, that the Federal Circuit in *Todd* did decline to address the question of *preliminary* injunctive relief pursuant to § 1491(a)(2), SMSI fails to address, much less distinguish, the cases discussed *supra* that limit the nonmonetary relief available under § 1491(a) to the types specifically identified in that provision.

Furthermore, for a CDA claim to be properly before this Court, it must have been submitted to the contracting officer for a decision.  *See* 41 U.S.C. § 7103(a)(1) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision.").  The Court has reviewed the claim SMSI submitted to the contracting officer.  *See* ECF No. 7-4.  That claim requests relief related only to SMSI's now-terminated contract with the VA, and not the alleged replacement contract.  *See id.* at 2 (requesting "[c]onversion of the termination for default . . . to a termination for convenience," "$719,003.39 in associated termination costs," "$142,884.95 for payments due," and "[a] formal declaration" related to alleged violations of OSHA regulations related to asbestos removal).  SMSI's request for relief related to the replacement contract thus is not part of its CDA claim here, even assuming for the sake of argument that it could be the subject of a proper CDA claim.[12]

Finally, SMSI appears to have submitted a CDA claim with the required "sum certain" — a classic monetary CDA claim.  *See, e.g.*, *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1329 (Fed. Cir. 2010) (holding that plaintiff's letter to

---

[11] As noted above, the Amended Complaint also requests that the Court "[i]ssue a declaratory judgment that the VA did not comply with applicable OSHA regulations."  Am. Compl. at 19. But even assuming that the Court has jurisdiction to issue such declaratory relief as part of a final judgment, SMSI's pending request for preliminary injunctive relief has no connection to the declaratory judgment SMSI seeks.

[12] Although an "interested party" may challenge a government procurement action, 28 U.S.C. § 1491(b), a CDA claim may be filed only by a contractor with respect to its contract that establishes privity with the government.  *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed. Cir. 1983) (Tucker Act's jurisdictional "concept of privity is mirrored in the CDA"); *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1371 (Fed. Cir. 2009); *cf. Johnson Lasky Kindelin Architects, Inc. v. United States*, 151 Fed. Cl. 642, 660 (2020).

contracting officer was "not valid . . . under the CDA" because, *inter alia*, "it did not state a sum certain"). But even if SMSI had submitted a CDA claim for *nonmonetary* relief, the Court would lack jurisdiction over at least two of the three types of relief requested in the TRO-PI Motion because such nonmonetary relief in this case would be improper on the facts pled. *See Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1362 (Fed. Cir. 2018) ("If 'the only significant consequence' of the declaratory relief sought 'would be that [the plaintiff] would obtain monetary damages from the government,' the claim is in essence a monetary one." (quoting *Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998))).

In *Securiforce*, the plaintiff filed suit pursuant to the Tucker Act and the CDA, seeking a declaration that its contract for fuel delivery, which the government terminated in part for default, "was improperly terminated." 879 F.3d at 1358. The Federal Circuit held that granting equitable relief via a declaratory judgment "would violate 'the traditional rule that courts will not grant equitable relief when money damages are adequate.'" *Id.* at 1362 (quoting *Alliant*, 178 F.3d at 1271)). Here, the gravamen of SMSI's Amended Complaint is a challenge to the government's termination for default; should SMSI succeed on the merits, SMSI's remedy is a conversion to a termination for convenience and associated money damages, *but does not include nonmonetary relief*. *See Securiforce*, 879 F.3d at 1360 ("Securiforce's claim concerning the termination for convenience, although styled as one for declaratory relief, would — if granted — yield only one significant consequence: it would entitle Securiforce to recover money damages from the government."); FAR 52.249-10(c) ("If, after termination . . . it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties shall be the same as if the termination had been issued for the convenience of the Government."); *Bowman Const. Co. v. United States*, 154 Fed. Cl. 127, 141 (2021) ("The remedy for a successful challenge to a termination for default is a conversion of the default termination to a termination for the convenience of the government which carries with it a monetary remedy — termination for convenience damages.").

Accordingly, even if SMSI had submitted a CDA claim to the cognizant contracting officer seeking nonmonetary relief — *i.e.*, to prevent the government from entering into a completion (or other follow-on) contract or authorizing work under one, *see* TRO-PI Mot. at 1 — this Court would likely lack jurisdiction over such a CDA claim in any event. *Securiforce*, 879 F.3d at 1361 (plaintiff cannot rely on CDA provisions providing this Court with "jurisdiction over some nonmonetary disputes . . . where, as here, the party is in essence seeking monetary relief").[13]

---

[13] The Court acknowledges that, pursuant to *Todd Construction*, it is conceivable that a CDA claim challenging a termination for default may seek nonmonetary relief to correct government records regarding the nature of the termination and thereby limit the government from noticing other agencies of a default if the Court finds it improper, *see* TRO-PI Motion at 1–2. In this case,

14

### C. SMSI Cannot Invoke § 1491(b) in This CDA Case to Obtain Preliminary Injunctive Relief

SMSI contends that § 1491(b) provides this Court jurisdiction to grant preliminary injunctive relief. *See* Pl. Mem. at 7–12; Pl. Reply at 9–12. This argument fails for several reasons.

At the outset, the Court readily acknowledges that nothing precludes a party from including both a CDA claim and an action pursuant to § 1491(b) in the same complaint. *See, e.g.*, *Taylor Consultants, Inc. v. United States*, 90 Fed. Cl. 531, 537 (2009) (describing a complaint that asserted "a CDA claim . . . for improper or bad faith termination" and "a post-award protest . . . under 28 U.S.C.§ 1491(b)"). But in SMSI's Amended Complaint, SMSI unambiguously asserts *only* a CDA claim. *See* Am. Compl. ¶ 12 ("This Court has jurisdiction over this action pursuant to the Contract Disputes Act of 1978 (41 U.S.C. § 7101 et seq.) and the Tucker Act (28 U.S.C. § 1491)."). Indeed, SMSI reaffirmed that fact during the Court's initial August 16, 2021 status conference. Tr. 7:16–22 ("THE COURT: But you do agree that there is no 1491(b) claim here at all, correct? [PLAINTIFF]: Related to bids, Your Honor, no. THE COURT: Well, related to a procurement action. This is a pure CDA claim in your Complaint. Correct? [PLAINTIFF]: Yes, Your Honor."). This concession is binding. *See, e.g.*, *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) ("'[A] lawyer's statements may constitute a binding admission of a party[]' if the statements are 'deliberate, clear, and unambiguous[.]'" (quoting *Fraternal Order of Police Lodge No. 89 v. Prince George's Cnty., Md.*, 608 F.3d 183, 190 (4th Cir. 2010))); *Checo v. Shineski*, 748 F.3d 1373, 1378 n.5 (Fed. Cir. 2014) (citing cases for the proposition that oral admissions should bind parties); *Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 633 n.34 (2020) (citing *Minter* and *Checo*); *Penna v. United States*, 153 Fed. Cl. 6, 25 n.25 (2021) (citing *Minter*).

As a result, the Court reads SMSI's Amended Complaint to assert only a CDA claim. SMSI's attempt in its briefs to recast its Amended Complaint as a § 1491(b) action is rejected. But even if the Court were to ignore SMSI's characterization of its own Amended Complaint, the Court cannot discern any § 1491(b) action therein.

Consistent with Federal Circuit precedent, this Court looks to substance over form when interpreting SMSI's Amended Complaint: "Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must 'look to the true nature of the action in determining the existence or not of jurisdiction.'" *James*, 159 F.3d at 579 (quoting *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994)). Under this standard, SMSI's Amended Complaint contains a § 1491(b) action only if it alleges facts, which, if true, demonstrate: "[1] objections to a solicitation,

---

however, SMSI did not include such a request in its CDA claim submitted to the contracting officer. Whether such relief nevertheless is available "as an incident of and collateral to" any final money judgment, pursuant to 28 U.S.C. § 1491(a), is a question for a later date.

[2] objections to a proposed award, [3] objections to an award, [or 4] objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement." *System App. & Techs., Inc. v. United States*, 691 F.3d 1374, 1380–81 (Fed. Cir. 2012), *quoted in Tolliver Grp.*, 151 Fed. Cl. at 84 n.11; *see also* 28 U.S.C. § 1491(b)(1). The Court cannot locate any set of facts within SMSI's Amended Complaint constituting an action pursuant to 28 U.S.C. § 1491(b).

SMSI appears to argue that the following allegations in its Amended Complaint qualify as an action pursuant to 28 U.S.C. § 1491(b): (1) "that Defendant had communicated with [SMSI's] surety regarding the potential 'takeover' of the contract at issue in this case, as well as Defendant's and the surety's efforts to find a 'completion contractor[]' to perform the follow-on 'procurement'"; (2) "that two potential offerors had been identified to complete the remaining work contemplated under the original contract"; and (3) "that Defendant pre-emptively excluded [SMSI] from completing the remaining work under the anticipated completion contract." Pl. Mem. at 8 (discussing Amended Complaint ¶¶ 89-97). None of these allegations — individually or collectively — constitutes a § 1491(b) action. The Court agrees with the government that "[t]he mere fact that the complaint includes a cursory discussion of the alleged circumstances of a follow-on, or completion, contract does not transform this CDA case into a bid protest under § 1491(b)." Def. Resp. at 11. The last allegation, regarding SMSI's having been excluded from the "remaining work under the anticipated completion contract," may be consistent with a possible § 1491(b) action, but such an action quite simply has not been pled. *Perry v. United States*, 149 Fed. Cl. 1, 7 (2020) (granting government's motion to dismiss, pursuant to both RCFC 12(b)(1) and 12(b)(6), because "a plaintiff must plead *facts*, not conclusory assertions of law" and explaining that "[t]o the extent any of [plaintiff's] claims fall within this Court's jurisdiction, he fails to allege sufficient facts — as opposed to conclusory legal assertions — which state a claim upon which relief can be granted"), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (conclusory allegations "are not entitled to the assumption of truth").

Although SMSI attempts to remedy its omission(s) in its motion briefing, a party cannot revise its operative complaint in that manner. *See, e.g.*, *McGrath v. United States*, 85 Fed. Cl. 769, 772 (2009) ("This court does not possess jurisdiction to hear claims presented for the first time in responsive briefing."); *Jackson v. United States*, 2021 WL 5066589, at *4 n.8 (Fed. Cl. Nov. 1, 2021) ("Plaintiff cannot amend his complaint via his response brief[.]" (citing RCFC 15(a))); *Dakota Tribal Indus. v. United States*, 34 Fed. Cl. 295, 298 n.2 (1995) (holding that "the court cannot consider the merits of" a theory because "the complaint fail[ed] to ground plaintiff's claims on this basis"); *see also* RCFC 15(a) (noting that after a party amends a pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave"); *cf. S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,

16

713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").[14]

The other allegations within SMSI's Amended Complaint support only a CDA claim. While SMSI argues that paragraphs 99–106 of its Amended Complaint — under the heading "Count One: Improper Termination for Default" — qualify as an alleged violation of a statute or regulation related to a procurement, s*ee* Pl. Reply at 10–11, that count constitutes a classic CDA claim. *See, e.g.*, *Securiforce*, 879 F.3d at 1358 (holding that a claim seeking a declaration that termination for default was improper is a monetary CDA claim).

SMSI further alleges that the VA violated FAR 49.402-3 ("Procedure for default"), Pl. Reply at 10–11, but SMSI cannot transform this CDA claim into a § 1491(b) claim. The violation SMSI alleges relates to SMSI's contract with the government and thus is a contract dispute properly decided as a CDA claim, pursuant to § 1491(a), and does not support an action pursuant to § 1491(b). SMSI relies on two cases — *Systems Application & Technologies v. United States*, 691 F.3d 1374 (Fed. Cir. 2012), and *Turner Construction v. United States*, 94 Fed. Cl. 561 (2010) — but both are inapposite.

SMSI invokes *Systems Application* to argue that the Federal Circuit has defined "procurement" to include "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services." Pl. Reply at 11 (quoting *Systems Application*, 691 F.3d at 1381). SMSI argues that the VA's alleged violation of termination procedures qualifies as an alleged violation of a procurement regulation because the purported violation "directly relates to the agency's 'need for' a completion contract, as there would be no need for a completion contract but for the VA's termination of the predecessor Contract." Pl. Reply at 11.

The facts of *Systems Application*, however, do not support SMSI's position. *Systems Application* involved a plaintiff that had received a contract award and protested the agency's proposed corrective action for that same procurement. 691 F.3d at 1378–80. The plaintiff in its complaint directly objected to the agency's *procurement* procedure:

> In this case, SA–TECH objected to a solicitation and alleged violations of statutes and regulations governing the procurement process. The Army has not shown that this protest has no 'connection with a procurement.' Rather *SA–*

---

[14] The Court notes that SMSI remains free to seek leave to file yet another amended complaint, this time to include an action pursuant to 28 U.S.C. § 1491(b). The Court further notes that the VA apparently entered into a replacement contract on October 28, 2021. *See* ECF No. 21. Whether SMSI may qualify as an "interested party" with respect to *that* contract remains to be seen, but SMSI's Amended Complaint does not do so.

17

> *TECH's complaint specifically challenged* the Army's announced decision to amend or revise the solicitation — an unambiguous objection 'to a solicitation' covered by the Tucker Act. SA–TECH also alleged violations of the Service Contract Act and procurement regulations — another basis for jurisdiction.

*Id.* at 1381 (emphasis added) (quoting 28 U.S.C. § 1491(b)(1)). In other words, the plaintiff's objections in its complaint challenged a *solicitation*. In contrast, SMSI objected only to termination procedures followed with respect to SMSI's already awarded contract, and not to an agency's decision regarding a new procurement.

*Turner Construction* is similarly distinguishable. SMSI asserts that the plaintiff in *Turner* "challenged a decision by the [agency] to 'strip' [plaintiff] of a recently awarded contract and to 're-procure' the same 'with [plaintiff] eliminated from the competition.'" Pl. Reply at 12 (quoting 94 Fed. Cl. at 563). In that case, however, the plaintiff's action was a bid protest pursuant to 28 U.S.C. § 1491(b) and expressly included a challenge to *the agency's decision to re-procure the contract*. 94 Fed. Cl. at 563, 573 (explaining that "[t]he GAO . . . recommended that the Army strip [plaintiff] of the contract . . . and re-procure [it]" and noting that plaintiff "argue[d] that the [agency's] decision to implement the recommendation of the GAO was arbitrary and capricious"). The case, thus, was focused on the agency's allegedly improper procurement action, but was not a claim for "relief arising under or relating to the [plaintiff's] contract." FAR 2.101 (defining "claim" for CDA purposes). SMSI's Amended Complaint, in contrast, does not contain a bid protest action pursuant to § 1491(b); instead, as SMSI admitted, its Amended Complaint represents a "pure CDA claim" related to the termination of its contract. Tr. 7:20–22. If SMSI is correct that the government improperly terminated SMSI's contract for default, SMSI's remedy is a monetary one — in the form of a conversion to a termination for convenience (and possible money damages) — and not an injunction reinstating the contract (or precluding a new procurement). On that note, the plaintiff in *Turner* also "request[ed] that the Court issue a permanent injunction ordering restoration of Turner's contract for the . . . project and barring the [agency] from re-procuring the contract," 94 Fed. Cl. at 585, something that SMSI's Amended Complaint does not do. Am. Compl. at 19.

In any event, as explained above, *Securiforce* demonstrates (and the FAR provides) that only monetary relief is available for a claim challenging a termination for default. In other words, SMSI cannot — via *ipse dixit* in its briefing — transmogrify a proper CDA claim for money damages into a bid protest-type action for equitable relief under 28 U.S.C. § 1491(b).

Finally, SMSI's contention that "this Court has found jurisdiction under 28 U.S.C. § 1491(b) to rule upon a wide variety of cases," Pl. Mem. at 10, does not support SMSI's request for a preliminary injunction. None of the cases upon which SMSI relies involve

18

a situation where the Court considered issuing injunctive relief pursuant to § 1491(b) for a CDA claim, challenging a default termination under § 1491(a).[15]

In sum, SMSI's Amended Complaint does not contain facts amounting to an action pursuant to 28 U.S.C. § 1491(b) and does not contain any request for relief pursuant to that statutory subsection. SMSI's reply brief does not — and, indeed, cannot — cure that omission.

## IV.    CONCLUSION

The law is clear that SMSI's Amended Complaint contains only a CDA claim pursuant to 28 U.S.C. § 1491(a), which does not provide this Court with the power to grant SMSI's motion for preliminary equitable relief. None of SMSI's arguments persuade the Court otherwise. Accordingly, the Court **DENIES** Plaintiff's motion for reconsideration.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge

---

[15] SMSI cites (1) *CCL, Inc. v. United States*, 39 Fed. Cl. 780 (1997); (2) *OTI Am., Inc. v. United States*, 68 Fed. Cl. 108 (2005); (3) *K-Lak Corp. v. United States*, 93 Fed. Cl. 749 (2010); and (4) *Tolliver Grp. Inc. v. United States*, 151 Fed. Cl. 70 (2020). Pl. Mem. at 10–11. The *CCL* plaintiff "contend[ed] that the [agency] violated [the Competition in Contracting Act] by expanding [a] contract beyond its scope without opening up that additional work to competition." 39 Fed. Cl. at 788. In *OTI America*, "[t]he question presented" was "whether the third, concluding prong of Paragraph (1) of Subsection 1491(b) embraces . . . a . . . situation . . . where the agency has entered into identical multi-award contracts that essentially involve a competition in stages to develop a new product, and ultimately to procure that product, and the protest concerns objections to the agency's actions in eliminating one of the competitors at an intermediate stage." 68 Fed. Cl. at 114. The court held that "there seems to be no doubt that the competition between and among contractors for an ultimate award occurs 'in connection with a procurement or a proposed procurement.'" *Id.* (quoting 28 U.S.C. § 1491(b)). In *K-Lak Corp.*, the plaintiff alleged in its complaint violations of statutes related to an agency's procurement that followed the expiration of the plaintiff's contract. 93 Fed. Cl. at 751–52 (noting, amongst other alleged violations of law in connection with a procurement, allegations of an illegal sole-source award). The *Tolliver* plaintiffs "claim[ed] that the agency's decision to cancel two . . . solicitations fails the Administrative Procedure Act [] standard of review applicable in actions brought pursuant to § 1491(b)(1)" and "assert[ed] that the agency's decision and supporting rationale — namely, to move the solicitations at issue to a recently awarded [multiple award IDIQ contract] — violate[d] FAR 19.502-2(b)[.]" 151 Fed. Cl. at 80. Unlike all the plaintiffs in the foregoing cases, SMSI alleges no facts supporting an action challenging, or that is otherwise in connection with, a procurement or proposed procurement, and thus fails to state a claim within this Court's § 1491(b) jurisdiction.